UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICK LINDSTROM,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>BINGHAM COUNTY, IDAHO, a political subdivision of the State of Idaho,<br><br>　　　Defendant. | Case No. 1:17-cv-00019-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. OVERVIEW

Pending before the Court is Defendant Bingham County's Motion for Summary Judgment. Dkt. 27. After the Motion was fully briefed, the Court held oral arguments and took the matter under advisement. For the reasons set forth below, the Court **DENIES** the Motion.

# II. BACKGROUND[1]

Plaintiff Rick Lindstrom filed this suit alleging that Bingham County ("the County") failed to reinstate him to his position in violation of the Family Medical Leave Act ("FMLA"), and discriminated against him in violation of the Americans with Disabilities Act ("ADA") and the Idaho Human Rights Act ("IHRA"), by failing to accommodate his disability and terminating his employment.

---

[1] The following facts are construed in the light most favorable to Lindstrom, the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

MEMORANDUM DECISION AND ORDER – 1

Bingham County employed Rick Lindstrom at Rattlesnake Landfill ("Rattlesnake"), located outside of Shelley, Idaho, as the Landfill Manager from July 26, 2004, until March 10, 2015. This was a full time position. Lindstrom's duties generally included operating the scale house when customers arrived, operating heavy machinery throughout the landfill, and supervising other employees.

Sometime during 2007, Lindstrom began to experience pain in his feet. This situation gradually got worse. When Lindstrom's foot pain became a problem, he would rotate tasks with other landfill employees in order to have an opportunity to do a seated task. During 2013 and 2014, Lindstrom spent most of his time in the scale house or in vehicles to limit the time he spent standing. The scale house and all landfill vehicles had heaters, which helped his feet, especially during colder weather.

On September 16, 2014, a co-worker took Lindstrom to the hospital because he was ill. Subsequent visits with doctors revealed multiple health issues including blurry vision and low blood sugar. Because of these health issues, one doctor excused Lindstrom from operating heavy equipment for a time and another suggested taking time off work to address his health concerns.

On September 30, 2014, Lindstrom signed a Request for Family Medical Leave. The form noted that Lindstrom's FMLA leave started September 24, 2014, and would last for 12 weeks, ending on December 16, 2014. During his leave, Lindstrom took medications and was able to improve his vision and level out his blood sugar. The conditions with his feet, caused by diabetes, did not get better or worse.

During November and December of 2014, Lindstrom stayed in contact with the County's Human Resources director, Nathan Satterthwaite, and discussed various work options for him upon his return. Lindstrom indicated that he wanted to try to do some work at Rattlesnake to see how it went; however, this never took place. Lindstrom's intent was to work mainly in the scale house—as he had done previously when his feet were causing him pain.

Lindstrom did not have a doctor's note immediately available upon completion of his FMLA leave and did not show up for work on December 17, 2014. Thereafter, the County continued his time off as a paid leave of absence.

On December 31, 2014, Lindstrom received a note from his doctor and provided it to the County on January 2, 2015. The County asked Lindstrom to work with his medical providers to determine the details of any work limitations and to fill out a Fitness for Duty form. Lindstrom complied and provided two Fitness for Duty forms—one on January 8, and one on January 13—from his two doctors. With some variations, both doctors recommended that Lindstrom not stand or walk for long periods because of the conditions with his feet along with other minor restrictions and suggestions.

As a result of these Fitness for Duty forms, the County determined that Rattlesnake was not a good fit for Lindstrom and instead offered him a position at the Central Transfer Station ("CTS") located in Blackfoot, Idaho. The County gave Lindstrom few details about the job at CTS, but said that he would have a stool to sit on.

Lindstrom initially agreed to attempt this position at CTS, however, when the day for him to start at CTS arrived, he left a message with his supervisor indicating that he

would not be able to make it for medical reasons. Lindstrom later indicated that he was not comfortable driving the significantly greater distance to CTS, as opposed to his usual 3-4 mile commute to Rattlesnake. After meeting with his doctors, they advised against driving longer distances and confirmed that a slower paced job close to home—essentially a position at Rattlesnake—would be best for Lindstrom at that time.

On March 5, 2015, the Board of Bingham County Commissioners passed a resolution reducing the hours of operation at Rattlesnake for financial reasons. In light of these reduced hours of operation, on March 10, 2015, the Board implemented a reduction in force and terminated Lindstrom and another part-time employee. The same day, the County notified Lindstrom of his termination.

Lindstrom exhausted his administrative remedies and filed the instant case on January 13, 2017. The County filed a motion seeking to dismiss Lindstrom's FMLA claim early on in the litigation (Dkt. 3, 9), which the Court denied (Dkt. 22). The County now moves for summary judgment on all claims.

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, this Court must "view[] the facts in the non-moving party's favor." *Id.* To defeat a motion for summary judgment, the respondent

need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (citation omitted). Accordingly, this Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

## IV. ANALYSIS

### A. FMLA Claim

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave . . . Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). On return from such leave, an employer must restore the employee to their prior job or an equivalent position. 29 U.S.C. § 2614(a)(1)(A)-(B).

The County alleges that summary judgment is proper on Lindstrom's FLMA claim because (1) he was unable to perform the essential duties of his job as required—therefore the County was not required to restore him to his prior job, and (2) he failed to timely provide a Fitness for Duty form—therefore he waived his rights to reinstatement.

1. **Essential Duties**

Under FMLA, if an employee is "unable to perform an essential function of the position because of a physical or mental condition" he is not entitled to restoration of his job upon return, although he may have rights under the ADA. *See* 29 C.F.R. § 825.216 (c).

Simply put, this is the single biggest disagreement between the parties in this case. This topic of "essential duties" bears upon all three claims for various reasons.

The County contends that operating heavy machinery and working outdoors (i.e. "fieldwork") were essential duties of the Landfill Manager at Rattlesnake. In fact, all employees who worked at Rattlesnake had to perform, at various times, all of these duties. The County postures that because (1) Lindstrom's doctors advised against him operating heavy machinery and (2) Lindstrom's preferred accommodation entailed mostly sitting in the scale house, he could not perform the essential duties of his former job. As a result, Lindstrom was not entitled to reinstatement, and since he rejected the "equivalent position" at CTS, his FMLA claim holds no water.

Both sides spend a great deal of time discussing what is or is not an essential duty, where and how these duties are defined, and how fieldwork was allocated at Rattlesnake. These discrepancies alone give rise to disputed facts, but on top of that, the County has not pointed to anything in the record that actually shows that Lindstrom *could not* perform the duties as outlined.

The County's reliance on Lindstrom's request to work mostly in the scale house is not determinative. Lindstrom felt this was the best fit under his circumstances; however,

requesting this accommodation did not mean that he could not have performed other work, including fieldwork, as required. The doctor's note recommending that Lindstrom take a break from operating heaving machinery[2] is likewise inconclusive. Although these two examples may indicate certain preferences for work, neither of them foreclosed Lindstrom from doing the full range of his prior duties. It is undisputed that there were certain restrictions recommended by his doctors, but Lindstrom himself stated "he was able to perform the essential functions of his former job at Rattlesnake."  *See* Dkt. 6, ¶ 17; *see also,* Dkt. 31, ¶ 13 ("I did not envision myself staying put in the scale house, as I could also operate all of the equipment.").

    Additionally, the Court finds the County's argument somewhat misplaced as operating machinery would take place in a seated position and thus compliment Lindstrom's needs, but also because it appears undisputed that prior to Lindstrom's FMLA leave he had worked "internally" with his co-workers to trade duties when he was having a difficult time. The County has not provided an explanation as to why that type of scenario could not have continued upon Lindstrom's return.

    The Court next turns to the County's second argument supporting summary judgment on the FMLA claim: failure to timely provide the requisite fitness for duty form.

---

[2] The Court notes that the medical provider gave this recommendation prior to Lindstrom's FMLA leave in fall 2014. There is no indication that the doctor's recommendation that Lindstrom's take a break from operating heavy machinery was intended to last indefinitely, nor was there any such restriction on the Fitness for Duty forms Lindstrom submitted in January 2015.

MEMORANDUM DECISION AND ORDER – 7

## 2. Fitness for Duty Forms

There is a threshold argument in the County's briefing on this topic that the Court will address first. The County seems to take issue with the fact that Lindstrom did not return to work the day immediately after his FMLA leave expired. In support of this argument, the County makes a tenuous connection between a phrase from a Ninth Circuit case and FMLA regulations. The Ninth Circuit case, *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112 (9th Cir. 2001), bears few similarities to the case at hand, but contains the following phrase: "Congress wanted to ensure that employees' entitlement to leave and reinstatement did not unduly infringe on employers' needs to operate their businesses efficiently and profitably." *Id.* at 1120.

The County states that under the FMLA an employee is entitled to 12 weeks off followed by reinstatement (*see* 29 U.S.C. § 2612(a)(1)(D) and 29 U.S.C. § 2614(a)(1)(A-B)) and then concludes that reinstatement is conditioned upon an employee returning to work immediately after the 12 week period—anything else would infringe upon the employer. This statement is true and seemingly self-explanatory: in order to be reinstated, an employee must return to work. The County, however, appears to be suggesting that this must take place instantly upon conclusion of the 12 weeks, or the employee has somehow waived the opportunity for reinstatement. There is no basis for such a position in case law or under the FMLA and the County has not pointed to any legal authority that indicates an employee must return to work at that specific time or risk losing his right to reinstatement. To the contrary, there are indications in the FMLA regulations—specifically on point in this case—that timing is not as rigid as the County suggests.

MEMORANDUM DECISION AND ORDER – 8

Section 825.216 of Title 29 of the Federal Regulations outlines that an employer "may delay restoration to an employee who fails to provide a fitness-for-duty certificate to return to work . . . ." It does not say that the employer can fire an employee or that the employee's rights to reinstatement have lapsed or ended, but simply that the employer can delay reinstatement. As will be discussed shortly, this is precisely what happened here. Lindstrom did not provide the form upon completion of his 12-week leave, the County requested it, Lindstrom produced it, and then the parties worked towards a solution. Additionally, albeit in a slightly different FMLA circumstance, regarding intermittent or reduced leave—but nonetheless a situation where a fitness for duty form is required to return—the code mandates that an employer "may not terminate the employment of the employee while awaiting such a certification of fitness to return to duty . . . ." 29 C.F.R. § 825.312.

It appears then that an employee's rights under the FMLA do not cease to exist simply because the employee did not return to work immediately upon the expiration of the 12 weeks. Assuredly, an employee cannot wait around and return at their convenience, but there is nothing indicating that the day after leave expires is the sole date upon which a person can return without forfeiting his or her rights. Furthermore, it is hard to digest this argument when the County admits that they chose to work with Lindstrom regarding his return and even extended it with paid time off.

A related argument is the County's assertion regarding the fitness for duty form. This is the subject matter of the County's prior motion to dismiss. The County alleges

that because Lindstrom did not timely provide them a fitness for duty form in the correct format, he has lost his right to reinstatement.

Under the FMLA, an employer has the option to require a fitness for duty form upon an employee's return to work:

> As a condition of restoration under paragraph (1) for an employee who has taken leave under section 2612(a)(1)(D) of this title, the employer may have a uniformly applied practice or policy that requires each such employee to receive certification from the health care provider of the employee that the employee is able to resume work . . . .

29 U.S.C.A. § 2614(a)(4); *see also* 29 C.F.R. § 825.312(a).

Under the same sections, an employer is required to notify an employee "if the employer will require a fitness-for-duty certification to return to work and whether that fitness-for-duty certification must address the employee's ability to perform the essential functions of the employee's job." 29 C.F.R. § 825.312. Ultimately, "if an employer provides the notice required, an employee who does not provide a fitness-for-duty certification or request additional FMLA leave is no longer entitled to reinstatement under the FMLA." 29 C.F.R. § 825.312.

The record shows that the County had this policy, and that it did in fact inform Lindstrom of his duties under this policy.[3] The County's argument, however, has flaws. First, there is no requirement in any of these sections that puts a timeframe on the required fitness for duty form. The employee clearly must provide the fitness for duty

---

[3] It appears the County informed Lindstrom of these requirements when he filed his original request for Family Medical Leave as well as when he received the FMLA Determination granting his request.

form prior to the employee returning to work—it is after all the "clearance" that ultimately allows the employee to return. In addition, while it is logical to assume that in order to avoid any downtime the employee should provide the form immediately after the 12 weeks, the regulations are silent when it comes to timing. The Court has trouble accepting the County's argument that Lindstrom did not "timely" file his fitness for duty form when there is no timing requirement; particularly because the County decided to continue Lindstrom on paid leave while each side got everything in order. It seems it was acceptable for Lindstrom to turn in his fitness for duty forms anytime during that period. At a minimum, there is a disputed material fact on this issue.

Second, as previously noted, the regulations explain that an employer "may delay" restoration until it receives the requisite paperwork. By allowing a delay for an employee to get paperwork, the regulations suggest that there is not a strict timing requirement.[4] Clearly, an employee could not take this to the extreme, wait many months to file his or her paperwork and still expect reinstatement. In this case, however, we do not have this extreme behavior. Lindstrom's leave ended on December 16, 2014. He got a note from his doctor on December 31, 2014, and submitted the same to the County on January 2, 2015.[5] The County then asked for the official fitness for duty forms and Lindstrom provided two. There is no indication that the County told Lindstrom that he had to submit

---

[4] This provision protects employers by allowing them to ensure their employees are fit to return to duty, but it nonetheless indicates a lack of stringent timing.

[5] Considering this would all have been happening around the holidays, this timeframe does not seem particularity concerning.

the forms prior to December 16,[6] nor is there any indication that Lindstrom was not diligent in getting the forms that the County requested.

Although the County contends that Lindstrom did not timely file his Fitness for Duty forms, it has not pointed to any rule, of its own or as prescribed in the FMLA regulations, that requires adherence to a specific timeframe. Lindstrom filed all the appropriate documents when asked, i.e. he complied with the County's requests.

In sum, there is a dispute as to whether Lindstrom could have performed the essential duties of his prior role and there is a dispute regarding whether Lindstrom timely filed his fitness for duty forms with the County. Summary judgment therefore is not appropriate as to the FMLA claim.

### B. ADA and IHRA Claims[7]

The Court next turns to the County's argument in support of summary judgment on the ADA and IHRA Claims.

> Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations. *Barnett v. U.S. Air*, 228 F.3d 1105, 1114 (9th Cir. 2000). "An appropriate reasonable accommodation must be effective, in enabling the employee to perform the duties of the position." *Id*. at 1115. The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process. *Id.* at 1114 –15; *Beck v.*

---

[6] The record shows that the County told Lindstrom that he needed to return the forms prior to his returning to work; but again, this evidence does not indicate a specific date. Rather, it only indicates that he could not start work until medically cleared.

[7] "Courts interpret the standards of disability [discrimination] under the ADA and IHRA identically. Accordingly, when the court refers to one statute, its reference impliedly includes the other." *Arthur v. Lowe's Home Centers LLC*, No. 114CV00194-EJL-CWD, 2016 WL 1254226, at *3 (D. Idaho Mar. 29, 2016) (internal citation omitted).

MEMORANDUM DECISION AND ORDER – 12

> *University of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996) ("A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith."). Employers, who fail to engage in the interactive process in good faith, face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible. *Barnett*, 228 F.3d at 1116.

*Humphrey v. Mem'l Hosps. Ass'n,* 239 F.3d 1128, 1137-38 (9th Cir. 2001). The County claims that summary judgment is proper on Lindstrom's ADA claim[8] as it relates to accommodations because it provided Lindstrom with a reasonable accommodation, and he failed to participate in the process. Furthermore, the County alleges that summary judgment is appropriate on the ADA claim as it relates to discrimination because Lindstrom was not a qualified individual under the ADA and it did not terminate him based on his disability.

### 1. Reasonable Accommodation

The County asserts that it tried to accommodate Lindstrom from the beginning. The County states that granting Lindstrom additional paid time off and the offer to work at CTS were both accommodations. Lindstrom counters that the position at CTS was not a reasonable accommodation because it was too far away and not an equivalent position as required under FMLA, but simply a low-level job created by the County. *See,* 29 U.S.C. § 2614(a)(1)(A)-(B). According to Lindstrom, an accommodation would have been to work with him at Rattlesnake and figure out a way for him to do his prior job.

---

[8] As noted, when the Court refers to the ADA, it is also referring to the equivalent state statute, the IHRA.

Lindstrom relies on 29 C.F.R. § 1630.2(o), which outlines that an employer can, and should, make modifications or adjustments to the prior job of the individual in order to meet their needs.

In response to this, the County has two arguments. First, the County states that it is "not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation," *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002), and, therefore, that the position at CTS was a reasonable accommodation. Second, the County falls back to the fieldwork argument and claims that working at Rattlesnake was simply not possible because Lindstrom could not perform all the tasks as required (specifically fieldwork). Because placement at Rattlesnake was not possible based upon Lindstrom's own abilities, the County did not need to try to accommodate him there.

In regards to the County's first contention—as the Court noted during oral argument, any regulation based upon a "reasonable" standard is typically a jury question. Here there is clearly a dispute as to whether CTS was a reasonable accommodation.

As to the County's second argument—the Court reincorporates the prior discussion on this topic. *See* Section IV (A)(1). It is not apparent to the Court that this issue of essential duties is as clear-cut as the County makes it out to be. First, Lindstrom claims he could do the work. The County claims he could not. Second, there is disagreement about which roles were truly essentially, and why Lindstrom could not trade them off with other employees as he had done prior to his FMLA leave. Construing the facts in Lindstrom's favor as the non-moving party, the Court cannot grant summary

judgment on this issue of essentially duties, which in turn, affects the outcome of this reasonable accommodation claim.

2. **Interactive Process**

Second, the Court addresses the County's argument that summary judgment is appropriate because Lindstrom did not participate in the process as required.

Here, both sides claim that the other failed to participate in the process, and that they alone put in the requisite effort. Lindstrom alleges that the County did not let him even try to work at Rattlesnake to see what he could/could not do and that when he suggested alternatives such as reduced hours and other modifications the County ignored him.

The County claims that they participated by suggesting CTS and giving Lindstrom additional time to return to work, but that Lindstrom flat out rejected the CTS position, only wanted to talk about options at Rattlesnake (which were out of the question), and cut off communications with the County when he did not get his way.

Clearly, this is a disputed issue. From everything present before the Court, it appears that both sides interacted but that neither side liked the other side's suggested options. Whether those communications and ideas are adequate under the prevailing statutes and case law is a question a trier of fact must determine.

3. **Qualified Individual**

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability." 42 U.S.C § 12112(a). "To prevail on a claim of unlawful discharge under the ADA, the plaintiff must establish he is a

qualified individual with a disability and that the employer terminated him because of his disability." *Dominguez-Curry v. Nev. Transp. Dep't,* 424 F.3d 1027, 1037 (9th Cir. 2005). "The ADA defines a 'qualified individual with a disability' as 'an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "An ADA plaintiff bears the burden of proving she is a qualified individual with a disability." *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1108 (9th Cir. 2000) (internal quotation marks omitted). A "disability" is "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(a). Major life activities include things such as caring for oneself, eating, sleeping, and working. 42 U.S.C. § 12102(2)(A) (2011). *See McAlindin v. Cnty. of San Diego*, 192 F.3d 1226, 1233 (9th Cir.1999).

On this point, the County reiterates again that because Lindstrom by definition "could not perform the essential functions" of his previous job role he was not a qualified individual with a disability. The problem with this approach is it disregards the "with or without reasonable accommodation" portion of the statute. *See* 42 U.S.C. § 12111(8). The "qualified individual" question therefore requires a determination of whether Lindstrom could perform the essential functions of his employment and whether the County provided appropriate accommodations. Being a qualified individual is intertwined with these two topics—both of which the Court has already identified as disputed. Consequently, the Court cannot rely on the County's argument here to grant summary judgment on the ADA claims.

### 4. Termination

Lindstrom bears the burden of proving that the County terminated him because of his disability. *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996).

The County believes that Lindstrom cannot meet this burden because his firing had nothing to do with his disability, but was the result of a reduction in force during which the County let another employee go as well. The County further states that Lindstrom has taken its Human Resource manager's testimony (Nathan Satterthwaite) out of context in support of his position. Lindstrom argues that, according to Satterthwaite, his health situation was "part of" the reason the County decided to reduce his hours at Rattlesnake and eventually let him go. The County argues in response that Lindstrom is reading something into Satterthwaite's testimony that is not there. The relevant part cited by the County is as follows:

> Q. So in that conversation in that meeting where you're deciding how to restructure, was there any conversation about Rick's disability?
> A: It seems like there was comments of what do we know if Rick is going to come back. We didn't know if he was going to be able to come back. We were working on it. But it wasn't anything that was a predominant part of the conversation. We were talking about the numbers.

Dkt. 33-2, 109:21-110:4. The County relies on the phrase "wasn't a predominant part of the conversation" to illustrate that Lindstrom's health issues were unrelated to the decision to reduce Lindstrom's hours at Rattlesnake or the decision to terminate his employment. This however completely ignores Satterthwaite's earlier comments on the same topic:

> Q: Right. Did this have anything to do with Rick Lindstrom, this decision to reduce the hours?

> A: *That was part of it.* We reassessed where we were at with all the employees, and obviously where you're only open three days a week you don't need as much manpower to cover that location.
> Q: So had you decided to terminate Rick prior to entering this order?
> - Objection by Counsel –
> A: I don't recall the connections on that honestly, But it was all in a relatively near vicinity. We were trying to address a lot of things at that point.

Dkt. 33-2, 75:8-21 (emphasis added). Here, Satterthwaite openly admits that Lindstrom's health concerns played a role in the decision to reduce Lindstrom's hours at Rattlesnake. Consequently, if the reduction in Lindstrom's hours was, as the County has asserted, the moving factor behind the reduction in force that resulted in Lindstrom losing employment, then it is reasonable to infer that Lindstrom's health issues were a consideration in his termination.

That aside, it is difficult to contemplate that a reduction in force in which another employee was also dismissed was targeted specifically at Lindstrom. However, it appears that multiple factors played into the decisions and these should be presented to the factfinder for resolution. At the very least, the County has not met its burden in this regard. Here, there are disputed facts surrounding Lindstrom's termination.

## V. CONCLUSION

One topic that will affect other areas in this litigation is the matter of "essential duties." Both sides spend a great deal of time discussing how to determine essential duties, i.e. work manuals, job posting descriptions, time spent on each duty, and the history of employees doing the various duties. At this stage, however, the Court does not weigh the evidence, but only determines if there are any disputed material facts. Here there are many. There are genuine issues of fact as to whether or not Lindstrom could

have performed the essential duties of his prior role at Rattlesnake, what those duties were, and whether they could be adjusted or modified. These disputes preclude summary judgment on the FMLA claim.

Additionally, there are questions of fact concerning whether or not reasonable accommodations where made; whether either party participated in the interactive process; whether Lindstrom would qualify under the ADA; and what the true reason for his termination was. All of these issues preclude summary judgment on the ADA and IHRA claims.

## VI. ORDER

IT IS HEREBY ORDERED:

1. The County's Motion for Summary Judgment (Dkt. 27) is **DENIED**.

DATED: March 15, 2018

David C. Nye
U.S. District Court Judge