UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICK LINDSTROM,<br><br>      Plaintiff,<br><br>      v.<br><br>BINGHAM COUNTY, IDAHO, a<br>political subdivision of the State of Idaho,<br><br>      Defendant. | Case No. 1:17-cv-00019-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. OVERVIEW

Pending before the Court is Defendant Bingham County's Motion for Partial Reconsideration of Summary Judgment. Dkt. 40. The Motion is briefed and ripe for the Court's review. Having fully reviewed the record herein, the Court finds the parties have adequately presented the facts and legal arguments in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court decides the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii). For the reasons set forth below, the Court DENIES the Motion.

## II. BACKGROUND

The County filed a Motion for Summary Judgment in this case. Dkt. 27. As part of its Motion, the County asked the Court to dismiss Lindstrom's Family Medical Leave Act ("FMLA") claim, alleging that, as a matter of law, the right to reinstatement expired

immediately upon the completion of the statutory 12 weeks of leave. Ultimately, the Court found that there were disputed facts related to all claims—included Lindstrom's FMLA claim—and denied the County's Motion for Summary Judgment. Dkt. 39.

As part of its Decision, the Court found the County's argument that Lindstrom's benefits under the FMLA expired promptly upon completion of the 12 weeks was somewhat misplaced, as the County based its position upon the premise that Lindstrom's failure to provide a fitness for duty form *prior* to his return foreclosed all benefits completely. The County filed the instant Motion for Partial Reconsideration based upon the Court's holding on this topic.

The County does not cite a particular line of the Court's Decision that it believes is fundamentally flawed, but rather asserts that the whole analysis is manifestly unjust and will lead to unintended consequences for employers. While somewhat lengthy, the Court will include the relevant paragraphs from its Decision for context, with emphasis on certain language that reflects the County's objection.[1]

> The County states that under the FMLA an employee is entitled to 12 weeks off followed by reinstatement (*see* 29 U.S.C. § 2612(a)(1)(D) and 29 U.S.C. § 2614(a)(1)(A-B)) and then concludes that reinstatement is conditioned upon an employee returning to work immediately after the 12 week period— anything else would infringe upon the employer. This statement is true and seemingly self-explanatory: in order to be reinstated, an employee must return to work. The County, however, appears to be suggesting that this must take place instantly upon conclusion of the 12 weeks, or the employee has somehow waived the opportunity for reinstatement. *There is no basis for such a position in case law or under the FMLA and the County has not pointed to any legal authority that indicates an employee must return to work at that specific time or risk losing his right to reinstatement.* To the contrary,

---

[1] The entire discussion regarding FMLA leave and fitness for duty forms can be found on pages 8-12 of the Court's prior decision. Dkt. 39.

there are indications in the FMLA regulations—specifically on point in this case—that timing is not as rigid as the County suggests.

Section 825.216 of Title 29 of the Federal Regulations outlines that an employer "may delay restoration to an employee who fails to provide a fitness-for-duty certificate to return to work . . . ." It does not say that the employer can fire an employee or that the employee's rights to reinstatement have lapsed or ended, but simply that the employer can delay reinstatement. As will be discussed shortly, this is precisely what happened here. Lindstrom did not provide the form upon completion of his 12-week leave, the County requested it, Lindstrom produced it, and then the parties worked towards a solution.

    . . .

*First, there is no requirement in any of these sections that puts a timeframe on the required fitness for duty form.* The employee clearly must provide the fitness for duty form prior to the employee returning to work—it is after all the "clearance" that ultimately allows the employee to return. In addition, while it is logical to assume that in order to avoid any downtime the employee should provide the form immediately after the 12 weeks, the regulations are silent when it comes to timing. The Court has trouble accepting the County's argument that Lindstrom did not "timely" file his fitness for duty form when there is no timing requirement; particularly because the County decided to continue Lindstrom on paid leave while each side got everything in order. It seems it was acceptable for Lindstrom to turn in his fitness for duty forms anytime during that period. At a minimum, there is a disputed material fact on this issue.

Second, as previously noted, the regulations explain that an employer "may delay" restoration until it receives the requisite paperwork. *By allowing a delay for an employee to get paperwork, the regulations suggest that there is not a strict timing requirement. Clearly, an employee could not take this to the extreme, wait many months to file his or her paperwork and still expect reinstatement.* In this case, however, we do not have this extreme behavior. Lindstrom's leave ended on December 16, 2014. He got a note from his doctor on December 31, 2014, and submitted the same to the County on January 2, 2015. The County then asked for the official fitness for duty forms and Lindstrom provided two. There is no indication that the County told Lindstrom that he had to submit the forms prior to December 16, nor is there any indication that Lindstrom was not diligent in getting the forms that the County requested.

Dkt. 39, at 8-12 (footnotes omitted) (emphasis added).

### III. LEGAL STANDARD

A federal court has the "inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (internal quotation marks omitted). A motion for reconsideration is "appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS*, *Inc.,* 5 F.3d 1255, 1263 (9th Cir. 1993). "[A] motion for reconsideration should not be granted, absent highly unusual circumstances." *Orange St. Partners v. Arnold,* 179 F.3d 656, 665 (9th Cir. 1999). A motion for reconsideration may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation. *Id.; Kona Enters., Inc. v. Estate of Bishop,* 229 F.3d 877, 890 (9th Cir. 2000).

### IV. ANALYSIS

Put succinctly, the County asserts that the Court concluded—in error—that (1) an employee is not required to return to work immediately upon the expiration of the 12-week leave period to preserve his rights under the FMLA—thus creating an additional undetermined period of leave—and (2) that a fitness for duty form can be returned at any point (also undetermined) after leave concludes and still be valid.

These statements, taken out of context, do appear somewhat erroneous. However, when considered in the context of the Court's decision, and in light of the facts of this case, it is clear that the Court did not reach either of these conclusions—it did not extend

FMLA leave beyond the statutory limits, or extend/modify the fitness for duty form requirements.

The Court's prior decision resolved a motion for summary judgment. At the summary judgment stage, the County had the burden of proving that there were no genuine disputes as to any material facts. *See* Fed. R. Civ. P. 56(a). In its Decision, the Court determined that the County had not met its burden and that there were disputes regarding whether Lindstrom timely filed his fitness for duty forms and was eligible for reinstatement under FMLA. Importantly, the Court did not extend FMLA leave, alter statutory requirements, or grant an unlimited time for submission of fitness for duty forms. FMLA leave is 12 weeks, period. The Court simply found that the County did not meet its burden in establishing that Lindstrom had to provide his form at (or before) the exact moment his FMLA leave concluded or risk losing his rights.

The facts of the case reveal that the County told Lindstrom he needed to return the forms prior to returning to work, but not prior to the expiration of his FMLA leave. When Lindstrom did not submit the forms immediately upon completion of his FMLA leave, the County told him that he needed to provide the requisite fitness for duty forms and that it would give him time to comply. The County did not fire Lindstrom at that time, or say that it would not reinstate him because he did not provide the forms that very day. Instead, pursuant to statute, the County "delay[ed] restoration until the certification [was] provided." 29 C.F.R. § 825.313(d). The County cannot now say that giving Lindstrom additional time to comply (which the statute specifically contemplates) somehow negates the protections Lindstrom had under FMLA. During the short time it took Lindstrom to

gather the necessary paperwork, the actual time of Lindstrom's FMLA leave may have expired, but his rights under FMLA had not.

The Court has reviewed the multiple cases the County cited in support of its position. While some are helpful, others are not. Many are unpublished cases and only two come from within the Ninth Circuit. While the County has accurately quoted language from each case that appears to limit the rights and benefits under FMLA to the statutory 12-week period—some even going so far as to say FMLA rights are completely extinguished after 12 weeks—the context of those cases is extremely important. As will be explained, each of these cases follows a general theme *that is not applicable here*.

In the cases cited by the County, the respective plaintiffs had taken FMLA leave, but upon completion of the statutory 12 weeks, remained on a different type of leave—either by choice, or because they did not have medical clearance to return to work. Eventually, each individual returned to work, sought the benefits of FMLA reinstatement, and were either not reinstated or were terminated all together.

For example, in *Hibbs v. Department of Human Resources*, 152 Fed. App'x. 648 (9th Cir. 2005) (unpublished), the plaintiffs' employer terminated him because he failed to return to work until two months after his FMLA leave expired. The court found that the protections under FMLA were not available to him. *Id.* at 649-50. In *Hunt v. DaVita, Inc.*, 680 F.3d 775 (7th Cir. 2012), the plaintiff's doctor had not medically cleared her even after six months of leave, and the plaintiff's employer terminated her. The court ruled that FMLA rights were not at issue because the plaintiff did not return to work upon the completion of her leave. *Id.* at 777. In *Weidner v. Unity Health Plans Insurance.*

*Corp.*, 606 F. Supp. 2d 949 (W.D. Wis. 2009), the plaintiff sought an additional 12 weeks of FMLA leave after being out on a 30-week leave, not realizing that portions of her 30-week leave were FMLA weeks. Her employer terminated her because she exceeded the company's 30-week leave policy. In that case, the court did not dismiss Weidner's FMLA claim, but denied the employer's summary judgment motion on that claim because there was a factual dispute regarding the number of service hours Weidner worked each year. *Id.* at 959. In *Mondaine v. American Drug Stores, Inc.*, 408 F. Supp. 2d 1169 (D. Kan. 2006), the plaintiff was unable to return to work for approximately three weeks after her FMLA leave concluded and her employer terminated her. The Court upheld the termination. *Id.* at 1206. In *Dogmanits v. Capital Blue Cross*, 413 F. Supp. 2d 452 (E.D. Pa. 2005), the court determined that an employee who returned 14 weeks after FMLA leave concluded was not protected under FMLA. *Id.* at 461-62. In *Farina v. Compuware Corp.*, 256 F. Supp. 2d 1033 (D. Ariz. 2003), the plaintiff relied upon two letters outlining when her FMLA leave concluded; however, one was incorrect. In that case, the court found that Farina was not entitled to double FMLA leave under an equitable estopple argument and that the employer did not violate the law when it terminated her. *Id.* at 1057-58. In *Beckendorf v. Schwegmann Giant Super Markets, Inc.*, 134 F.3d 369, at *2 (5th Cir.1997) (unpublished), the court determined that because a doctor had not cleared the plaintiff for work until six weeks after FMLA leave expired, FMLA protections were no longer available to her. *Id.* at *2-3.

In all of these cases, the individual plaintiffs did not even try to return to work at the end of their FMLA leave, remained away from work for extended periods of time,

returned, *and then* tried to claim that the FLMA still protected them. That is not what

occurred here. At the completion of his FMLA leave, Lindstrom did not have the fitness

for duty forms prepared, so the County gave him time to get his paperwork together—

which he did.[2] As noted, while Lindstrom was aware of the requirement to turn in the

forms before returning to work, he was not aware that he had to turn them in prior to the

completion of his FMLA leave in order to retain those benefits.

Interestingly, one of the cases cited by the County contradicts its position and

opens up a whole different way of looking at this case—through an equitable estoppel

lens. In *Santosuosso v. NovaCare Rehabilitation*, 462 F. Supp. 2d 590 (D.N.J. 2006), the

Court did—as the County cites—state that "without an employer's permission for an

extension of FMLA leave, an employee who fails to return to work on or before the date

that FMLA leave expires would lose the right to reinstatement." *Id.* at 597. *However,* this

quote is from another case—*Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 767

(5th Cir. 2001)—and is cited by the *Santosuosso* court in *rejecting* the *Hunt* court's

holding as distinguishable. *Santosuosso*, like the previous cases, had different factual

circumstances than present here today, and ultimately the *Santosuosso* court found that

the plaintiff was not entitled to FMLA reinstatement because of the insufficient number

---

[2] Lindstrom's FMLA leave concluded on December 16, 2014. He provided a note from his doctor on December 31, 2014, and two fitness for duty forms—one on January 8, and one on January 13, 2015. As the Court noted in its Decision, considering this all happened during the holidays—a time when government offices (such as the County) and doctor's offices (such as Lindstrom's medical providers) are closed or operating under reduced hours, the timeframe does not seem particularly concerning. There is nothing in the record suggesting that Lindstrom was not diligent in getting the required paperwork each time the County instructed him to do so.

of hours she worked each year. 462 F. Supp. 2d at 598. That being said, the *Santosuosso*

court's analysis of the employer's argument—similar to the County's argument in this

case—is illustrative. It explained:

> Here, the record is undisputed that after Plaintiff's FMLA leave expired, she
> took a longer leave pursuant to Defendants' EID program and with
> Defendants' permission. The record does not contain evidence showing that
> Defendants informed Plaintiff that the extension of her leave was a
> revocation of her FMLA rights.
> . . .
> Defendants had knowledge of Plaintiff's intention to take a longer than 12
> week leave and their employee benefit program allowed her to do so. Thus,
> in light of the Congressional encouragement for employers to provide more
> generous benefits than mandated by the law, *see* 29 U.S.C. § 2653, Plaintiff
> should not lose her FMLA protection for taking a leave longer than 12 weeks
> when her employer gave her the permission to do so.

*Id.* at 597-98. This analysis illustrates that other courts, like this Court in its prior

Decision, have found that the FMLA regulations are not as restrictive as the

County suggests and that the intent of the FMLA is to protect and help employees

rather than hold them to a rigid standard for benefits and reinstatement.

Lastly, while no circuit court has definitively weighed in on the use of an equitable

estoppel argument to support an FMLA claim, some lower courts have determined that an

employer's actions precluded them from later terminating an employee—even if

normally the employer would have had the right to do so. *See id. at 598*; *Barone v.*

*Leukemia Soc. of Am.*, 42 F. Supp. 2d 452, 463 (D.N.J. 1998) (ruling that "under the

doctrine of equitable estoppel, the [employer's] conduct in the instant case precludes

them from electing to terminate [Plaintiff's] employment, a right to which they would

have otherwise been entitled"). To be sure, this Court is not weighing in on the

applicability of this defense in this case. However, as the Court noted in its prior decision, it is difficult to rule as a matter of law that Lindstrom's rights were somehow extinguished, particularly in light of the County's own behavior and willingness to delay Lindstrom's reinstatement until he provided his fitness for duty forms.

The Court is not trying to split too fine a hair, but even in the FMLA fitness-for-duty regulation itself, the language indicates that the forms are to be provided "at the end of FMLA leave" and "at the time FMLA leave is concluded." *See* 29 C.F.R. § 825.313(d). Had congress intended for the rights of an employee on leave under FMLA to expire the moment the actual term of leave expired, presumably it would have used explicit timing language such as "on or before the final day" on "the day immediately following expiration of the 12 weeks." As written, however, "at the end" and "concluded" are not so restrictive as to foreclose an individual's FMLA rights if he or she has not provided the form at the very moment the 12 weeks expires. Especially in this case, it is disingenuous for the County to assert that an employer must be extremely strict under FMLA and cannot work with an employee, when that is exactly what the County did here. Again, citing the regulation itself, an employer may delay restoration until the employee provides certification. *See* 29 C.F.R. § 825.313(d).[3]

As Lindstrom points out, this is exactly what the County did—it delayed Lindstrom's restoration until he provided the forms—and it cannot now shield itself from its own actions. When Lindstrom's FMLA leave expired, the County placed him on a

---

[3] This regulation states, ". . . if the employer has provided the required notice (see § 825.300(e)); the employer may delay restoration until the certification is provided." 29 C.F.R. § 825.313(d).

different form of leave. During that alternative leave, while Lindstrom was getting his paperwork together, he still had rights under FMLA. Alternatively, at the very least, there is a disputed fact concerning this issue that precludes summary judgment.

The Court did not extend FMLA leave, nor even the time to submit a fitness for duty form, but rather it found that the County, under the specific facts of this case, had not met its burden in establishing that Lindstrom's rights had been extinguished.

Finally, even though the summary judgment process is final in many respects, when denied—as here—the Court's rulings are interlocutory. Based upon the evidence presented at trial, the Court is well within its right to alter, amend, or change previous rulings. The Court, however, declines to do so now based upon the record before it. Accordingly, the Motion to Reconsider is DENIED.

## VI. ORDER

IT IS HEREBY ORDERED:

1. The County's Motion for Partial Reconsideration of Summary Judgment (Dkt. 40) is DENIED.